UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                          Plaintiff,

    v.

STARDUST DINERS, INC., D/B/A
COLONY DINER,

                          Defendant.
------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

21-CV-03122 (ENV) (LGD)

**LEE G. DUNST**, Magistrate Judge:

       Presently before the Court is former defense counsel Milman Labuda Law Group PLLC's ("MLLG" or the "Firm") Motion for Attorney's Fees from Defendant Stardust Diners, Inc. ("Stardust Diners" or "Defendant") at Electronic Case File Number ("ECF No.") 34 (the "Motion").[1] MLLG seeks an order to collect unpaid attorney's fees of $33,321.50. ECF No. 34-2 at 2. Defendant did not respond to the Motion, despite being served with it by MLLG. ECF No. 36. Plaintiff opposes the Motion. ECF No. 40.

       For the reasons set forth below, the undersigned respectfully recommends to District Judge Eric N. Vitaliano that the Motion be GRANTED in part to award MLLG attorney's fees of $33,001.50.

---

[1] MLLG's Motion at ECF No. 34 was a motion to withdraw as counsel, as well as motion for attorney's fees. During a status conference on October 21, 2022, the undersigned granted MLLG's request to withdraw as counsel, but held their motion for attorney's fees in abeyance. ECF No. 44. Consequently, the only portion of the motion remaining before the Court is the determination on attorney's fees.

I.      BACKGROUND

    A.      History of the Attorney-Client Relationship

According to MLLG, its attorney-client relationship with Defendant began in 2011, when Defendant signed a retainer agreement with MLLG in an unrelated action ("2011 Retainer Agreement"). ECF No. 34-2 ¶ 3. The 2011 Retainer Agreement presumably governs the instant action and states that MLLG would represent Defendant in "the above-referenced matter and any other labor and employment law matters." ECF No. 35-1.[2] As to payment, the 2011 Retainer Agreement states that "[y]ou shall retain Milman Labuda Law Group, PLLC at an hourly rate of $450.00 for partners and $200.00-$325.00 for associates. These rates may be adjusted annually by Milman Labuda Law Group PLLC." *Id*. Defendant paid MLLG for the legal service MLLG provided in the 2011 case. *Id*. ¶ 4.

In 2016, Defendant requested MLLG's representation in a proceeding before the United States Equal Employment Opportunity Commission ("EEOC") that ultimately led to this instant action. ECF No. 34-2 ¶ 5. Two employees of Defendant filed two charges of discrimination with the EEOC, alleging violations of Title VII by Defendant. ECF No. 1 ¶ 6. Thereafter, the EEOC initiated an obligatory pre-suit administrative proceedings against Defendant (the "EEOC Proceedings"), including EEOC investigations and conciliation efforts. ECF No. 35 ¶ 18. MLLG represented Defendant in the EEOC proceedings. *Id*. ¶ 5. The EEOC found reasonable cause to believe that Defendant violated Title VII, and Defendant failed to conciliate the two charges. ECF No. 1 ¶¶ 8, 12.

    B.      The Instant Motion and Related Procedural History

On June 2, 2021, Plaintiff commenced this action against Defendant, alleging violations

---

[2] The Court notes that this version of the document is unsigned.

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  ECF No. 1.  This case was originally assigned to Judge Eric N. Vitaliano and Magistrate Judge Arlene R. Lindsay.  ECF No. 2.  On June 8, 2022, the case was reassigned to the undersigned.  June 8, 2022 Order.

MLLG previously represented Defendant in this matter.  ECF No. 34-1 at 2; ECF No. 44.  Firm attorneys Jamie Felsen and Brett Joseph were counsel of record for Defendant.  ECF Nos. 6 & 17.

The parties initially disputed the validity of affirmative defenses, but later attempted to settle the case.  ECF Nos. 15, 16, & 21.  However, the parties were unable to reach an agreement during a settlement conference on June 2, 2022.  ECF No. 22.  On July 22, 2022, the Court granted the parties' request for a stay of discovery to further explore potential settlement.  ECF No. 31.

Subsequently, Defendant apparently ceased communication with MLLG.  ECF No. 32.  MLLG made attempts to contact Defendant to discuss the possibility of settlement and an upcoming status conference, but MLLG was unsuccessful in communicating with Defendant.  ECF No. 34-1 at 3.

As a result, on September 2, 2022, MLLG filed a motion pursuant to Local Civil Rule 1.4 seeking an order to withdraw as counsel for Defendant and for unpaid attorney's fees in the amount of $33,321.50.  ECF No. 34-1 at 1.

The undersigned held a status conference on September 9, 2022.  ECF No. 37.  A representative of Defendant did not appear, despite the Court's August 22, 2022 Order requiring a representative at the conference.  *Id.*; Aug. 22, 2022 Order.  At that conference, the undersigned requested further information from the parties about the Court's authority to

exercise ancillary jurisdiction over an attorney fee dispute, which they provided at ECF Nos. 39, 40, & 41.

Plaintiff's opposition to the instant motion states that while Plaintiff does not oppose the Motion to withdraw as attorney, the Court should not exercise ancillary jurisdiction over the fee dispute. ECF No. 40. MLLG filed a reply, elaborating on factors that weigh in favor of exercising jurisdiction. ECF No. 41.

During an October 21, 2022 status conference, the undersigned granted MLLG's motion to withdraw as counsel for Defendant and held in abeyance the instant motion for attorney's fees. ECF No. 44.

Since then, Defendant stopped defending the action altogether. ECF No. 47. Despite the Court twice ordering Defendant's attendance, Defendant failed to appear at status conferences on October 7, 2022 and October 21, 2022. ECF Nos. 37 & 42.

On December 2, 2022, the Clerk of the Court entered default against Defendant. ECF No. 47. On April 28, 2023, Plaintiff filed a Motion for Default Judgement, which the undersigned is addressing in a separate Report and Recommendation. ECF No. 50.

### C. The Outstanding Balance of Attorney's Fees

MLLG's Motion and supporting documentation set forth the fees and work performed on behalf of Defendant. *See* ECF Nos. 34 & 35. The outstanding balance currently owed to MLLG by Defendant totals $37,533.84, of which $33,321.50 is purportedly for fees and costs relating to the EEOC Proceedings and the current lawsuit, and $4,121.34 was for an unrelated lawsuit. ECF No. 35 ¶¶ 16-17. MLLG only seeks to recover the $33,321.50 for the EEOC Proceedings and the current lawsuit. ECF No. 35 ¶ 16.

MLLG's bill is calculated by multiplying the hours of legal service by the attorney's

4

corresponding hourly rate. *See generally* ECF No. 35. MLLG's billing records indicate, that Jamie S. Felsen billed $400 per hour; Brett Joseph billed $325-$375 per hour; and Kyle Monaghan billed $300 per hour. *Id*. ¶¶ 5, 13, 15. To substantiate the credentials and experience of the MLLG attorneys, MLLG submitted evidence stating:

- Jamie S. Felsen is a partner at MLLG. He graduated from St. John's School of Law in 2005 and has been employed by MLLG since then. *Id*. ¶¶ 9, 13.

- Brett Joseph is an associate at MLLG. He was admitted to practice law in 2015 after attending St. John's School of Law and has practiced exclusively labor and employment law throughout his legal career. *Id*. ¶ 12.

- Kyle Monaghan is an associate with MLLG, who was admitted to practice law in 2019 after attending St. John's School of Law and has practiced exclusively labor and employment law throughout his legal career. *Id*. ¶ 14.

The attorneys' work relating to the EEOC Proceedings included investigating the EEOC charges, drafting position statements, preparing responses to requests by the EEOC for information and documents, and conciliation efforts concerning the EEOC. ECF No. 34-2 ¶ 18. For the current action, MLLG attorneys drafted the answer, responded to discovery demands, appeared for several in-person and telephonic conferences, and prepared for and appeared for a settlement conference. *Id*.

Throughout the course of representing Defendants, MLLG sent monthly invoices to Defendant stating the legal work performed and time spent on each. *See generally* ECF No. 35-2. Defendant never objected to the invoices and periodically made partial payments. *Id*. at 5, 7, 9, 14. According to the invoices, Defendant paid a total of $49,000 between September 2020 and March 2021. *Id*. However, since the inception of the current action, Defendant has only

5

made two payments: $5,000 on December 22, 2021, and $2,000 on July 27, 2022. *Id.* at 28, 43.

## II. Legal Standard

### A. Ancillary Jurisdiction

"'It is well settled that a federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes . . . between litigants and their attorneys when the dispute relates to the main action.'" *Beattie v. Farmanian*, 20-CV-3523 (JMA) (SIL), 2022 WL 2467644, at *2 (E.D.N.Y. May 9, 2022) (citing *Levitt v. Brooks*, 669 F.3d 100, 103 (2d Cir. 2012)), r*eport and recommendation adopted*, 20-CV-3523 (JMA) (SIL), 2022 WL 3914987 (E.D.N.Y. Aug. 31, 2022). Several non-exhaustive factors weigh in favor of exercising ancillary jurisdiction, which include: "(1) familiarity with the subject matter of the suit, especially with the amount and quality of work performed by the attorneys; (2) a court's responsibility to protect officers of the court in such matters as fee disputes; (3) the convenience of the parties; and (4) judicial economy." *Id*.

Notably, the Court only needs "some" familiarity to justify its exercising jurisdiction. *Idrovo v. Mission Design and Mgt. Inc.*, 10-CV-4188 (SLT), 2012 WL 6755273, at *2 (E.D.N.Y. Nov. 28, 2012) (finding ancillary jurisdiction over fee dispute appropriate because "there is some, albeit minimal, familiarity with [counsel's] participation in this matter."), *report and recommendation adopted*, 10-CV-4188 (SLT) (RLM), 2013 WL 29925 (E.D.N.Y. Jan. 2, 2013).

### B. Attorney's Fees

Courts in this Circuit have recognized several legal grounds for recovering attorney's fees, including "theories of breach of contract, accounts-stated or quantum meruit." *Clover v. Shiva Realty of Mulberry, Inc.*, 10 CV 1702 RPP, 2011 WL 4530536, at *3 (S.D.N.Y. Sept. 30, 2011). Each theory requires the Court to evaluate the reasonableness of claimed attorney's fees. *See generally id*.

To do so, Courts start with "the lodestar method—[taking] the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 617 (E.D.N.Y. 2017) (quoting *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). Regarding hours, courts use their "experience with the case, as well as [their] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" *Castillo v. J. Coffey Contracting Inc.*, 19-CV-5845 (CLP), 2022 WL 603995, at *2 (E.D.N.Y. Mar. 1, 2022) (citing *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 155 (E.D.N.Y. 2013)). Regarding hourly rates, courts presumes that "the hourly rates employed in the district in which the reviewing court sits" are reasonable unless contradicted by persuasive evidence. *New York Assn. for Retarded Children v. Cuomo*, 72-CV-356 (RJD), 2019 WL 3288898, at *2 (E.D.N.Y. July 22, 2019). In recent years, "[p]revailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour." *D & A Bus Co., Inc.*, 270 F. Supp. 3d at 618 (collecting cases); *Clover*, 2011 WL 4530536, at *3 (in another case involving MLLG, awarding attorney's fees using hourly rate of $425.00 for partners and $275.00-300.00 for associates); *see also Arnone v. CA, Inc.*, No. 08 Civ. 4458, 2009 WL 585841, at *3 (S.D.N.Y. Mar. 6, 2009) (holding that $425.00 is typical for an experienced labor lawyer in the New York area).

In reviewing the billing records, "the Court is not required to perform extensive calculations over the entire billing record in awarding attorneys' fees." *Cuomo*, 2019 WL 3288898 at *2. "Instead, the Court is permitted to 'use estimates in calculating and allocating an attorney's time . . . .'" *Id*. (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

Under the breach of contract theory in New York, "[a]n attorney who drafted a retainer

7

agreement has the burden of showing that the contract was 'fair, reasonable, and fully known and understood by the client.'" *Beattie*, 2022 WL 2467644, at *3 (citing *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59 (2d Cir. 2000)). However, "under New York law, a private retainer agreement is viewed as presumptively fair in the absence of fraud, deceit, overreaching, or undue influence." *Ritz v. Mike Rory Corp.*, 12-CV-0367 (JBW) (RML), 2014 WL 7010661, at *2 (E.D.N.Y. Aug. 28, 2014) (citing *Carey v. Mui–Hin Lau*, 140 F. Supp. 2d 291, 296 (S.D.N.Y. 2001)).

In the absence of a signed contract, New York law recognizes the theory of accounts-stated, which requires "an agreement between the parties to an account based upon prior transactions between them." *Clover*, 2011WL 4530536, at *3 (citing *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999)). The claimant must show "(1) an account was presented; (2) it was accepted as correct; and (3) Defendant promised to pay the amount stated." *Fed. Corp. v. Future Tire Co., Ltd.*, 19-CV-6357 (DRH) (AYS), 2021 WL 2550472, at *3 (E.D.N.Y. June 22, 2021) (citation omitted). Notably, "[s]uch an agreement may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment." *Clover*, 2021 WL 4530536, at *3 (awarding MLLG attorney's fees against the parties who received but did not object to MLLG's monthly invoices) (citation omitted).

Further, in the absence of either an enforceable contract or an accounts-stated, a claimant may recover in *quantum meruit* under New York law by establishing "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Fersel v. Paramount Med. Services, P.C.*, 588 F. Supp. 3d 304, 320 (E.D.N.Y. 2022),

8

*reconsideration denied*, 18-CV-2448 (AMD) (RML), 2022 WL 14813738 (E.D.N.Y. Oct. 26, 2022).  Finally, "[t]he party seeking the fee award bears the burden of submitting sufficient evidence to support the hourly rates and hours billed." *Cuomo*, 2019 WL 3288898, at *2 (citing *Hugo v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012)).

### III. DISCUSSION

#### A. Ancillary Jurisdiction Over This Fee Dispute Is Appropriate

Applying the standards outlined above, the Court exercises its ancillary jurisdiction to consider MMGL's Motion.  *See Levitt,* 669 F.3d at 103.

First, the Court is generally familiar with the subject matter and the amount and quality of work performed by the MLLG.  Notably, MLLG only seeks to recover fees relating to the EEOC proceedings and the current lawsuit and not in connection with another unrelated action where MLLG represented Defendant.  ECF No. 35 ¶ 17.  As for the pre-suit EEOC proceedings, the Court is reasonably familiar with the type of legal service involved as EEOC proceedings are administrative pre-requisites for Title VII actions that the Court often encounters.  *See Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 483 (2015) ("[A] court may review whether the EEOC satisfied its statutory obligation to attempt conciliation before filing suit.").  As for the current litigation, MLLG participated in proceedings before the undersigned and the docket reflects the firm's work over the course of this litigation.

Second, this Court would be the most convenient forum to address this fee dispute in the interests of judicial economy.  For example, determining a proper award of attorney's fees requires the Court to use its "experience with the case, as well as its experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Castillo*, 2022 WL 603995, at *2.  Because the Court is already acquainted with the proceedings and the legal services rendered, the dispute can be resolved more efficiently in the present proceeding.  Most

9

importantly, Plaintiff filed a motion for Default Judgement after the Clerk of Court noted Defendant's default on December 2, 2022.  ECF Nos. 47 & 50.

### B.      The Attorney's Fees Charged by MLLG are Reasonable

The Court finds MLLG's claimed attorney's fees are reasonable and recommends an award of Attorney's fees warranted based on either an account-stated or *quantum meruit* bases.

For an account-stated theory, MLLG showed that it sent Defendant monthly invoices, which Defendant did not object to and paid some portion.  ECF No. 35.  The monthly invoices present detailed entry of tasks performed and time spent.  *Id*.  By making partial payments, Defendant in essence consented that the billed rates are reasonable.  By failing to dispute charges over any entries, Defendant essentially acknowledged that the hours spent are reasonable and appropriate.  Additionally, under the 2011 Retainer Agreement for another action, Defendant paid MLLG at a similar hourly rate.  ECF No. 35 at 1.  Although the 2011 Retainer Agreement may not govern MLLG's breach of contract claim in the current action,[3] the long-term attorney-client relationship manifests the reasonableness of MLLG's bills.  Thus, MLLG is entitled to recover attorney's fees.  *See Clover*, 2021 WL 4530536, at *3 (awarding MLLG attorney's fees against parties who received but did not object to MLLG's monthly invoices) (citation omitted).

Alternatively, MLLG also is entitled to recover against Defendant under a theory of *quantum meruit*.  *See id.*  First, the hourly fees sought—$400 for partner and $300-375 for senior associate—are consistent with New York standards and presumptively reasonable.  Indeed, courts previously have held that MLLG's hourly rates are reasonable.  *See id.* (holding that the hourly rates of $425.00 for MLLG partners and $275.00-300.00 for MLLG associates are

---

[3] Since the Court finds that both the account-stated and *quantum meruit* theories are satisfied by the current facts, the Court need not address MLLG's breach of contract theory of recovery here.  As noted previously, the version of the 2011 Retained Agreement submitted by MLLG is unsigned.  ECF No. 35-1.

10

reasonable for labor law cases); *Ritz*, 2014 WL 7010661, at *2 (awarding attorney's fees to Jamie Felsen in the hourly rate of $300 when he was a senior associate at MLLG). After thoroughly reviewing counsel's billing records, the Court further finds that the MLLG spent a reasonable number of hours on its legal service for Defendant. The Court did not identify entries in which hours are clearly overstated or tasks unrelated to the action are included. In addition, there is nothing in a review of MLLG's billing statements and affidavits which suggests MLLG acted unreasonably or in bad faith. Accordingly, MLLG is entitled to recover unpaid attorney's fees under a theory of *quantum meruit*.

However, the Court deducts $320 from the $33,321.50 sought by MLLG. A review of MLLG's invoice reveals that its calculation included legal services provided by Matthew Brown, which MLLG did not claim to recover. ECF No. 35-2 at 3. Because MLLG did not provided any relevant background information about Mr. Brown, the Court cannot evaluate the reasonableness of Mr. Brown's fees. This includes (a) 0.7 hours on invoice number 52598 and (b) 0.1 hours on invoice number 53146, totaling $320 (calculated using a $400 hourly rate). *Id*.

Accordingly, the Court deducts $320.00 from the $33,321.50 outstanding bill, and awards MLLG attorney's fees in the amount of $33,001.50.

### IV.    Conclusion

For the above reasons, the undersigned recommends that Judge Vitaliano award MLLG unpaid attorney's fees in the amount of $33,001.50 to be paid by Defendant.

### V.    Objections to This Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Vitaliano. FAILURE TO FILE TIMELY OBJECTIONS

11

SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

Dated: Central Islip, New York
August 10, 2023

**SO ORDERED**:

/s/ Lee G. Dunst
LEE G. DUNST
United States Magistrate Judge